# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

PLANNED PARENTHOOD OF
TENNESSEE AND NORTH MISSISSIPPI;
*et al.*,

        Plaintiffs,

v.

HERBERT H. SLATERY III, Attorney
General of Tennessee; *et al.*,

        Defendants.

CIVIL ACTION
CASE NO. 3:20-cv-00740
JUDGE CAMPBELL
MAGISTRATE JUDGE NEWBERN

## REBUTTAL DECLARATION OF DR. AUDREY LANCE, M.D., M.S., IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Audrey Lance, M.D., M.S., declares the following:

    1.    I am a Plaintiff in this lawsuit and submit this declaration in further support of Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction to enjoin enforcement of Tenn. Code. Ann. § 39-15-218 (effective October 1, 2020) ("the Act").

    2.    I understand that Defendants in this case have suggested that, along with mandatory statements required by the Act, I am free to tell my patients that I disagree with those statements.

    3.    I do not believe that my disassociating myself from or contradicting the Act's required information will undo the harm of providing that mandated statements to patients.

    4.    While I could try to explain that I am being forced to provide the Act's mandated statements, ultimately, these statements are coming from me. Patients do not experience this—

1

physicians being forced to provide statements against their will and against their medical judgment—in other medical contexts, which makes it particularly difficult for them to understand what is happening when I inform them that I am giving them a statement against my will.

5. If the Act goes into effect, I can only imagine how confusing it will be for a patient to be informed not only that I am providing a statement against my will, but that the statement is *false* and not medically accurate. This is particularly concerning because the statements the Act requires, as noted in my prior declaration, are not only untrue, but they undermine informed consent. Mem. Law Supp. Mot. TRO/Prelim. Inj. ("Pls.' Br.") Ex. 7, Decl. of Audrey Lance, M.D., M.S. ("Lance Decl.") ¶¶ 42, ECF No. 6-7.

6. I understand that the Defendants are arguing that the mandated phrase "it may be possible to reverse the intended effects of a chemical abortion utilizing mifepristone if the woman changes her mind, but that time is of the essence" is a phrase that just means "taking mifepristone alone is not always effective at ending a pregnancy." I find this extremely confusing and do not know how I am supposed to explain the meaning of the mandated phrase to my patients if they ask me about it. If it only means "taking mifepristone is not always effective at ending a pregnancy," then how do I explain the rest of the statement? Is the statement implying that mifepristone is *less* effective at terminating a pregnancy "if the woman changes her mind"? How do I explain why I am referring patients to the Department of Health website for "[i]nformation on and assistance with reversing the effects of a chemical abortion" if the phrase only refers to the possibility that mifepristone alone may not terminate a pregnancy? What assistance could the Department of Health provide for that? Or, alternatively, is the mandated statement actually about so-called medication abortion "reversal" treatments, as it appears to be?

2

7. If I am having a difficult time understanding what the State of Tennessee is trying to tell my patients, how are my patients supposed to know what to do with this information?

8. The most important things my patients should be thinking about with regards to their abortion, prior to starting the abortion, has to do with their decision-making—is this the right decision for them? If so, which method of abortion is right for them?—and the confusion that the Act is going to create is a distraction from that.

9. Even worse, the actual content of the mandated statements, concerning reversal and a patient changing their mind, contradicts the message I give to each patient prior to their abortion, which is that they need to be absolutely sure that this is the right decision for them before beginning the abortion process.

10. I tell my patients, if they are thinking about changing their mind, then they need to take more time to consider their decisions. The Act's requirements completely contradict this, forcing my patients to actively think about changing their mind after-the-fact.

11. I understand that one of the State's witnesses has stated that "a woman's choice to reverse her abortion is contrary to the abortion center's business model that assumes that abortion is a great good and that no one would ever choose reversal." Resp. Opp'n Pls.' Mot. TRO/Prelim. Inj. Ex. D, Decl. of Dr. George Delgado ¶ 43, ECF No. 16-4. I do not understand what this statement is based on, but certainly I would never judge or disbelieve a patient if she changed her mind and chose not to proceed with her abortion.

12. I am committed to respecting my patients' autonomy and their decisions about their lives, their pregnancies, and their reproduction. I am similarly committed to giving my patients honest and accurate information and high-quality evidence-based health care. The Act would impede my ability to do these things.

3

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 25, 2020

Audrey Lance, M.D., M.S.