# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD OF ) <br> TENNESSEE AND NORTH ) <br> MISSISSIPPI, et al., ) <br> ) <br>    Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> HERBERT H. SLATERY, et al., ) <br> ) <br>    Defendants. ) | NO. 3:20-cv-00740 <br><br> JUDGE CAMPBELL <br> MAGISTRATE JUDGE NEWBERN |

## TEMPORARY RESTRAINING ORDER

Pending before the Court are Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 4),[1] Defendants' Response (Doc. No. 16),[2] and Plaintiffs' Reply (Doc. No. 31).[3] Plaintiffs request the Court issue a temporary restraining order enjoining enforcement of Tennessee Code Annotated Section 39-15-218 ("Section 218"), which takes effect on October 1, 2020. Plaintiffs argue Section 218 compels physicians and abortion providers, upon threat of criminal prosecution and other sanctions, to provide their patients with inaccurate,

---

[1] Plaintiffs' Motion is supported by a Complaint (Doc. No. 1), Memorandum (Doc. No. 6), and the Declarations of Courtney A. Schreiber, M.D., M.P.H. (Doc. No. 6-1), Steven Joffe, M.D., M.P.H. (Doc. No. 6-2), Melissa Grant (Doc. No. 6-3), Ashley Coffield (Doc. No. 6-4), Corinne Rovetti, FNP, APRN-BC (Doc. No. 6-5), Rebecca Terrell (Doc. No. 6-6), and Audrey Lance, M.D., M.S. (Doc. No. 6-7).

[2] Defendants' Response is supported by the Declarations of Brent Boles, M.D. (Doc. No. 16-1), Donna Harrison, M.D. (Doc. No. 16-2), Matthew Dunne (Doc. No. 16-3), George Delgado, M.D. (Doc. No. 16-4), Sarah Hurm (Doc. No. 16-6), Carrie Beth Dunavant (Doc. No. 16-7), Michael Podraza, M.D. (Doc. No. 16-8), and Martha Shuping, M.D., M.A. (Doc. No. 16-10).

[3] Plaintiffs' Reply is supported by the Declaration of Christine Clarke (Doc. No. 31-1), and Rebuttal Declarations of Audrey Lance, M.D., M.S. (Doc. No. 31-2), Courtney A. Schreiber, M.D., M.P.H. (Doc. No. 31-3), and Steven Joffe, M.D., M.P.H. (Doc. No. 31-4).

misleading, and irrelevant information that a chemical abortion (what Plaintiffs call "medication abortion") can be "reversed." Plaintiffs assert such a claim is wholly unsupported by reliable scientific evidence and has been rejected by leading medical associations.

Section 218 defines a "chemical abortion" as "the use or prescription of an abortion-inducing drug dispensed with intent to cause the death of the unborn child." Tenn. Code Ann. § 39-15-218(a)(2). The statute contemplates that chemical abortions will be performed by sequentially administering two drugs: mifepristone and misoprostol. Tenn. Code Ann. § 39-15-218(a)(2).

Section 218 requires a private office, ambulatory surgical treatment center, or other facility or clinic, that has performed more than 50 elective abortions during the previous calendar year to "conspicuously post a sign" that contains the following message:

> Recent developing research has indicated that mifepristone alone is not always effective in ending a pregnancy. It may be possible to avoid, cease, or even reverse the intended effects of a chemical abortion utilizing mifepristone if the second pill has not been taken. Please consult with a healthcare professional immediately.

Tenn. Code Ann. § 39-15-218(b). This sign "must be printed with lettering that is legible and at least three quarters of an inch (0.75″) boldfaced type." Tenn. Code Ann. § 39-15-218(c). Private offices and ambulatory surgical treatment centers must post the sign "in each patient waiting room and patient consultation room used by patients on whom abortions are performed." Tenn. Code Ann. § 39-15-218(d). Hospitals and other facilities are required to post the sign "in each patient admission area used by patients on whom abortions are performed." *Id.*

Section 218 prohibits a physician from performing a chemical abortion involving the use of mifepristone and misoprostol unless the physician has informed the patient at least 48 hours in advance of the following: "(1) It may be possible to reverse the intended effects of a chemical

2

abortion utilizing mifepristone if the woman changes her mind, but that time is of the essence; and (2) Information on and assistance with reversing the effects of a chemical abortion utilizing mifepristone is available on the department of health website." Tenn. Code Ann. § 39-15-218(e). This requirement is subject to a "medical emergency" exception. *Id.*

After the mifepristone is dispensed, Section 218 requires the physician or an agent of the physician to provide the patient with written medical discharge instructions that include the following statement:

> Recent developing research has indicated that mifepristone alone is not always effective in ending a pregnancy. It may be possible to avoid, cease, or even reverse the intended effects of a chemical abortion utilizing mifepristone if the second pill has not been taken. Please consult with a healthcare professional immediately.

Tenn. Code Ann. § 39-15-218(f).

Section 218 also requires the Tennessee Department of Health to make available on its website, and in print materials, information "designed to inform the woman of the possibility of reversing the effects of a chemical abortion utilizing mifepristone if the woman changes her mind," as well as "information on and assistance with the resources that may be available to help reverse the effects of a chemical abortion." Tenn. Code Ann. § 39-15-218(h)(i). The Department is not required to provide this information, however, until "ninety (90) days after the effective date," or until January 1, 2020. All other requirements in Section 218 take effect on October 1, 2020. 2020 Tenn. Pub. Acts Ch. 764, § 4.

As for sanctions, Section 218 provides: "Any person who knowingly or recklessly performs or induces or attempts to perform or induce an abortion in violation of [the statute] commits a Class E felony." Tenn. Code Ann. § 39-15-218(j). Private offices, ambulatory surgical treatment centers, or other facilities or clinics that negligently fail to post the required sign are subject to a

3

civil penalty of $10,000 for each day an abortion is performed there. Tenn. Code Ann. § 39-15-218(k). The statute creates a cause of action for the patient, the father, or a parent of a minor patient, to recover actual and punitive damages against a non-compliant physician. Tenn. Code Ann. § 39-15-218(l).

Plaintiffs Planned Parenthood of Tennessee and North Mississippi, Memphis Center for Reproductive Health, Knoxville Center for Reproductive Health, and carafem operate medical facilities that offer abortions to patients. (Doc. No. 1 ¶¶ 8-13). Plaintiff Audrey Lance, M.D., N.S., is an obstetrician/gynecologist who has provided medication abortions at PPTNM. (*Id.*) Plaintiffs have named as defendants: Herbert H. Slatery, III, the Tennessee Attorney General; Lisa Piercey, M.D., the Commissioner of the Tennessee Department of Health; Rene Saunders, M.D., the Chair of the Board for Licensing Health Care Facilities; W. Reeves Johnson, Jr., M.D., the President of the Tennessee Board of Medical Examiners; and Amy Weirich, Glenn R. Funk, Charme P. Allen, and Tom Thompson, the District Attorneys General for the jurisdictions where Plaintiffs offer services. (*Id.* ¶¶ 14-21).

The Complaint asserts that Section 218 violates: (1) the First Amendment rights of Plaintiffs, their physicians, and their staffs; (2) the substantive due process rights of Plaintiffs' patients; (3) Plaintiffs' equal protection rights; and (5) the equal protection rights of Plaintiffs' patients. (Doc. No. 1 ¶¶ 84-92).

Plaintiffs argue Section 218 violates their First Amendment rights by compelling them to engage in speech that is untruthful and misleading. In *National Institute of Family and Life Advocates v. Becerra,* ___ U.S. ___, 138 S. Ct. 2361, 2371, 201 L.Ed.2d 835 (2018), the Supreme Court explained that legislation requiring an individual to speak a particular message is content-based and generally subject to strict scrutiny under the First Amendment. Less protection has been

4

afforded to compelled speech, according to *Becerra,* where the legislation regulates professional conduct that incidentally involves speech. 138 S. Ct. at 2372. Citing *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 884, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992), the *Becerra* Court explained that informed consent laws are an example. In *Casey,* the law required physicians, before performing an abortion, to convey to the patient: "the nature of the procedure, the health risks of the abortion and childbirth, and the 'probable gestational age of the unborn child.'" 138 S. Ct. at 2373. The law also required physicians to inform patients of the availability of printed materials provided by the State relating to adoption and various forms of assistance. *Id.* The *Becerra* Court ultimately determined that the legislation at issue in that case, which required crisis pregnancy centers to disclose to patients that the State offered abortion services, was *not* an informed consent law, and therefore, greater scrutiny was required under the First Amendment. 138 F.3d at 2368-75.

Relying on *Becerra* and *Casey,* the Sixth Circuit recently addressed a First Amendment challenge to a law requiring a physician, before performing an abortion, to make audible the fetal heartbeat, perform an ultrasound, and display and describe the ultrasound images to the patient. *EMW Women's Surgical Center, P.S.C. v. Beshear,* 920 F.3d 421, 424 (6th Cir. 2019). Concluding that the law involved informed consent, the court held it was not required to "highly scrutinize" the statute, as long as it met three requirements: "(1) it must relate to a medical procedure; (2) it must be truthful and not misleading; and (3) it must be relevant to the patient's decision whether to undertake the procedure, which may include, in the abortion context, information relevant to the woman's health risks, as well as the impact on the unborn life." 920 F.3d at 428-29.

Tennessee law on informed consent is not limited to Section 218. Before providing medical treatment generally, physicians are required to obtain voluntary and informed consent, consistent

5

with recognized practice standards in the relevant medical specialty, in order to avoid civil liability. Tenn. Code Ann. § 29-26-118. In order to avoid criminal liability in the abortion context, a physician must obtain "written consent" from the patient 48 hours before the procedure, after informing the patient of the following:

> (1) That according to the best judgment of her attending physician or referring physician she is pregnant;
>
> (2)(A) The probable gestational age of the unborn child at the time the abortion is to be performed, based upon the information provided by her as to the time of her last menstrual period or after a history, physical examination, and appropriate laboratory tests;
>
> (B) If an ultrasound is performed as part of the examination prior to performing the abortion, the person who performs the ultrasound shall offer the woman the opportunity to learn the results of the ultrasound. If the woman elects to learn the results of the ultrasound, the person who performs the ultrasound or a qualified healthcare provider in the facility performing the ultrasound shall, in addition to any other information provided, inform the woman of the presence or absence of a fetal heartbeat and document the patient has been informed;
>
> (3) That if twenty-four (24) or more weeks have elapsed from the first day of her last menstrual period or twenty-two (22) or more weeks have elapsed from the time of conception, her unborn child may be viable, that is, capable of sustained survival outside of the womb, with or without medical assistance, and that if a viable child is prematurely born alive in the course of an abortion, the physician performing the abortion has a legal obligation to take steps to preserve the life and health of the child;
>
> (4) That numerous public and private agencies and services are available to assist her during her pregnancy and after the birth of her child, if she chooses not to have the abortion, whether she wishes to keep her child or place the child for adoption, and that her attending physician or referring physician will provide her with a list of the agencies and the services available if she so requests; and
>
> (5) The normal and reasonably foreseeable medical benefits, risks, or both of undergoing an abortion or continuing the pregnancy to term.

Tenn. Code Ann. § 39-15-202(b), (d). The physician must also inform the patient of "the particular risks associated with her pregnancy and continuing the pregnancy to term, based upon the

6

information known to the physician, as well as the risks of undergoing an abortion, along with a general description of the method of abortion to be used and the medical instructions to be followed subsequent to the abortion." Tenn. Code Ann. § 39-15-202(c). These provisions are subject to a "medical emergency" exception. Tenn. Code Ann. § 39-15-202(f).

Plaintiffs argue Section 218 radically alters these informed consent requirements, and violates the First Amendment, by requiring abortion providers to convey to patients – orally, through signs, and through written discharge instructions – "scientifically unsupported and misleading information" to their patients. (Doc. No. 6, at 5). To support their argument, Plaintiffs have filed the declarations of several experts who state that there is no credible evidence that a chemical abortion can be "reversed" by administering high dosages of progesterone after the patient has taken mifepristone, but before taking misoprostol. *See, e.g.,* Declarations of Courtney A. Schreiber, M.D., M.P.H. (Doc. No. 6-1), Steven Joffe, M.D., M.P.H. (Doc. No. 6-2), Melissa Grant (Doc. No. 6-3), Ashley Coffield (Doc. No. 6-4), Corinne Rovetti, FNP, APRN-BC (Doc. No. 6-5), Rebecca Terrell (Doc. No. 6-6), and Audrey Lance, M.D., M.S. (Doc. No. 6-7). The declarants state that the theory upon which Section 218 is based has been rejected as unsupported by the American College of Obstetricians and Gynecologists, and has been called into question by other studies. *Id.* In addition, the declarants express concern that the mandated message may lead patients to start the abortion process before they have made a firm decision because they erroneously believe the process can be reversed later. *Id.*

Defendants have filed expert declarations supporting their position that the mandated message is accurate. (Declarations of Brent Boles, M.D. (Doc. No. 16-1), Donna Harrison, M.D. (Doc. No. 16-2), George Delgado, M.D. (Doc. No. 16-4), Michael Podraza, M.D. (Doc. No. 16-

7

8), and Martha Shuping, M.D., M.A. (Doc. No. 16-10).[4]

The Court is unable to assess fully the competing expert opinions as to whether the mandated message is "truthful and not misleading," in the absence of the experts' testimony, adduced through direct and cross examination. That assessment must await the preliminary injunction hearing at which the testimony of the expert witnesses may be offered by the parties.

Nevertheless, the Court does not need to await the hearing to determine that another aspect of the mandated message is "misleading." The statute gives the Department of Health a period of up to 90 days in which to publish information, on its website and in printed materials, about the possibility of reversing the effects of a chemical abortion and about resources to help the patient in that endeavor. Tenn. Code Ann. § 39-15-218(h). With this built-in delay, Section 218 requires abortion providers to tell patients that "information on and assistance with reversing the effects of a chemical abortion" is available on the Department of Health website, when in fact, such information and assistance may not be available. Therefore, a patient desiring to access such information would be unable to do so. *See* Coffield Declaration, at ¶ 27 ("I do not know what information or assistance the website will provide and, to my knowledge, no such information has been posted on the department of health website yet."); Lance Declaration, at ¶ 29 ("I understand that the Department of Health has not yet published these materials on their website.") Consequently, the mandated message contains misleading information.

In determining whether to issue a temporary restraining order ("TRO") pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood

---

[4] All defendants except Davidson County District Attorney General Glenn Funk have also filed declarations suggesting providers would not be sanctioned or penalized for expressing disagreement with the mandated message. (Doc. Nos. 28-1 to 28-6). General Funk filed a separate declaration stating he will not enforce Section 218 because he believes it is unconstitutional. (Doc. No. 29-1).

8

of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399 (6th Cir. 2017).

Based on the parties' filings, and for the reasons set forth herein, the request for a TRO is **GRANTED** on the terms and conditions stated herein. The Court finds as follows:

(1) Plaintiffs have demonstrated a strong or substantial likelihood of success on the merits of their claims that Section 39-15-218 violates the First Amendment by requiring abortion providers to convey a mandated message that is misleading, as described above. Given the Court's conclusion regarding the First Amendment claim, it is unnecessary at this stage to consider Plaintiffs' other claims.[5]

(2) Plaintiffs have demonstrated they will suffer immediate and irreparable injury, harm, loss, or damage if injunctive relief is not granted pending a preliminary injunction hearing. Section 218 imposes criminal penalties and other sanctions on abortion providers who fail to comply with its provisions. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages.") In addition, the deprivation of First Amendment rights constitutes irreparable injury. *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014) (recognizing that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.); *see also Planned Parenthood Ass'n of*

---

[5] Thus, the Court need not consider Defendants' challenge to Plaintiffs' standing to raise the equal protection and due process claims on behalf of their patients.

9

*Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) (finding irreparable harm based on a violation of constitutional rights.)

(3) The balance of relative harms among the parties weighs in favor of Plaintiffs and against Defendants. Enjoining enforcement of Section 39-15-218 will preserve the status quo pending a preliminary injunction hearing.

(4) The public interest will not be harmed by preserving the status quo pending a preliminary injunction hearing. *See Husted,* 751 F.3d at 412 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.")

It is, therefore, ORDERED that, pursuant to Federal Rule of Civil Procedure 65: Defendants, their officers, agents, employees, servants, attorneys, and all persons in active concert or participation with them, are hereby enjoined and restrained from enforcing Section 39-15-218, pending further order of the Court.

Given that Defendants are unlikely to incur damages or costs from this injunctive relief, Plaintiffs are excused from posting security as a condition of obtaining injunctive relief.

This TRO is effective upon its issuance on September 29, 2020, at 4:00 p.m. and expires on October 13, 2020, at 4:00 p.m., absent further order of the Court. Plaintiffs' request for a preliminary injunction will be considered at a hearing on October 13, 2020, at 10:00 a.m., as set by separate order.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE